```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Douglas P. Bews**
**and Naruko K. Bews**

   **v.**                                                      06-CV-431-PB
                                                                Case No. 2009 DNH 083

**Town of Carroll, et al.**

### MEMORANDUM AND ORDER

Doug and Naruko Bews have filed an action pursuant to 42 U.S.C. § 1983 against the Town of Carroll, New Hampshire (the "Town"), as well as other defendants, alleging violations of their rights under the First and Fourteenth Amendments of the United States Constitution. The Bews also bring state law claims. Defendants have filed a motion for summary judgment, and for the reasons set forth in this Memorandum and Order, I grant the motion with respect to the Bews' federal claims.

### I.  BACKGROUND

In February 2000, the Bews purchased a motel business named Lyons Hospitality. Before making the purchase, the Bews claim that they inquired with the Town as to what permits would be needed to develop the property. They further claim that a Town representative informed them that no permits were required and

the "property could be used as desired."  (Compl., Doc. No. 1, ¶ 12.)  At some point on or before June 11, 2001, the Bews installed and operated a public Laundromat and an Off-Highway Recreational Vehicle ("OHRV") rental business on the site.  (Id. ¶¶ 13-15.)  The Bews allege that Myriam O'Neill, who ran the OHRV rental business, received verbal confirmation from the Town to operate that venture on the Bews' property.

The Bews continued to rent OHRVs for several months, but in late 2002, the Town informed them that they would have to appear before the Town Planning Board, because under a local ordinance the rental of OHRVs constituted a "change of use" from the property's initial use as a motel.  (Defs.' Mot. for Summ. J., Doc. No. 47, at 3.)  The Bews refused, claiming both that there was no such ordinance that prohibited their activity and that the OHRV rental business did not constitute a "change of use" because it did not alter the commercial lot.[1]  (Compl., Doc. No. 1, ¶ 19.)

On December 31, 2002, the Board of Selectmen sent the Bews a letter informing them that they were in violation of a town

---

[1] The Bews also claimed that other, similar business were not required to appear before the Planning Board.  (Compl., Doc. No. 1, ¶¶ 17-18.)  Doug Bews requested permission from the Planning Board to inspect Site Plan Review documents for certain businesses to determine whether those businesses had obtained Planning Board approval before changing the use of their properties.  (Id. ¶ 21.)  Selectman Frederick Hollis allegedly informed Bews that none of the businesses about which Bews inquired submitted site plans.  (Id. ¶ 24.)

zoning ordinance and requesting their presence before the Planning Board for a Site Plan Review.[2]  (Defs.' Mot. for Summ. J., Doc. No. 47, at 3-4.)  Doug Bews appeared before the Board of Selectmen at a February 23, 2003 meeting, at which time he objected to the Town's assertions that his business was in violation of local law.  (Compl., Doc. No. 1, ¶¶ 26-28.)  Shortly thereafter, in March 2003, the Town amended its zoning ordinances to require a special exception for the sale or rental of OHRVs.  (Id. ¶ 29.)  Doug Bews appeared at subsequent Board of Selectmen meetings, and asserted that his business was "grandfathered" and therefore exempt from the special exception requirement.  (Id. ¶¶ 32-33.)

The Bews also argued that the Town was selectively enforcing its regulations against them.[3]  For example, at a January 5, 2004 Board of Selectmen meeting, Doug Bews argued that his snowmobile business was "grandfathered" much like another rental business named Garneau's Garage.  The Town maintained that Garneau's

---

[2] The December 31, 2002 letter identified two potential problems for the Bews' rental business.  First, the letter stated, "[y]our operation of a business on your property for snowmobile rentals and/or tours is clearly a change or expansion of use of your property." (Doc. No. 47-3, at 32.)  Second, they were informed that "there is the issue of whether snowmobile rentals is permitted under the Town of Carroll Zoning Ordinance." (Id.)  The Town informed the Bews that an appearance before the Planning Board was required to resolve the matter.

[3] "The Defendants were repeatedly warned by Mr. Bews that the Town was violating their (Plaintiffs') rights by the actions taken against the Bews and by the favorable treatment given to others."  (Compl., Doc. No. 1, ¶ 38.)

Garage was "grandfathered" because it had been in existence for many years, but Bews believed that because Garneau's Garage "doubled the size of their building used for OHRVs sales and storage without going through the required board reviews," Garneau's Garage was also in violation of the local ordinance. (Id. ¶ 34.) The Bews also claim that at a Board of Selectmen meeting in February 2004, the Town "actively participated in instructing the Mount Washing [sic] Hotel and Resort and Northern Extremes of North Conway, NH on how to circumvent the ordinances to allow them to continue renting OHRVs for the remainder of the season without seeking approval." (Id. ¶ 36.) During a July 26, 2004 Board of Selectmen meeting, Doug Bews also complained that Selectman Jay Ouellette owned property that was in violation of zoning regulations. (Id. ¶ 42.)

Apparently resigned to the fact that the matter could not be resolved outside of court, the Town filed a Petition for Injunctive Relief and Fines on August 13, 2004, and the Bews were served with notice on August 18. The Town amended the petition on September 28, 2004, seeking the following relief from the Coos County Superior Court: first, that the court issue a permanent injunction prohibiting the Bews from renting snowmobiles at their place of business until they were granted approval for such use; second, that the court issue a permanent injunction prohibiting the Bews from renting snowmobiles at their place of business

until they obtained a special exception from the Zoning Board of Adjustment; third, that the court fine the Bews $275.00 for each day that they continued to operate their rental business without approval from the Town; and finally, that the court award attorneys' fees and costs to the Town.  Although the Town disputes this allegation, the Bews now claim that the petition "was filed in retaliation for the Plaintiffs' [Bews] exercise of their rights to free speech in complaining about other violations, and their assertion of their rights to equal protection under the laws, under both the United States and State of New Hampshire Constitutions . . . [and] constitutes unequal treatment . . . ."  (Id. ¶ 48.)

The matter was ultimately resolved on November 22, 2004, with the Bews "agreeing not to rent snowmobiles from their property without further order from the town."  (Id. ¶ 47.)  The stipulation states in its entirety:

> NOW COME the parties in the above-captioned matter and stipulate and agree, subject to the approval of the Court, that the following may be entered on the docket as a final order in this case:
>
> 1. The Defendants, Douglas P. and Naruko K. Bews, agree not to establish or conduct snowmobile rental operations upon the premises (Tax Map 207, Lot 21) of the establishment owned by the Defendants and known as Lyons Hospitality, L.L.C., until such time as the Defendants are approved to engage in such use in accordance with the Town of Carroll's Zoning Ordinance and Site Plan Regulations.

> 2. The Plaintiff, the Town of Carroll, agrees to settle the instant action without an award of fines, pursuant to RSA 676:17, 1(b), or an award of its attorney's fees and costs, pursuant to RSA 676:17, II.
>
> 3. This Stipulation is a compromise of a disputed matter and is not to be construed as an admission of any party's liability.
>
> 4. The parties shall bear their own Court fees and costs in the aforementioned matter, subject to Paragraph 5 of this Stipulation.
>
> 5. In the event any action is instituted by either party to enforce the provisions of this Stipulation, the prevailing party shall be entitled to recover its attorney fees and costs.

(Stipulation, Doc. No. 47-4.) The Bews maintain that they only agreed to the Stipulation because they lacked sufficient means to fight the matter in court. They also claim that the entire affair cost them money and resulted in a "substantial loss to their business, [as well as to their] reputation." (Compl., Doc. No. 1, ¶ 67.)

As a result, on November 20, 2006, the Bews filed a seven count Complaint in this court. In Count 1, the Bews bring a claim pursuant to 42 U.S.C. § 1983 and argue that the defendants "selectively enforced their zoning ordinances against Plaintiff, and refused to look into violations Plaintiffs brought to their attention . . . thereby violating their rights to equal protection and due process, under the law, contrary to the United States Constitution, Amend. XIV." (Id. ¶ 75.) In Count 2, the Bews assert a similar equal protection claim under the New

Hampshire Constitution.  In Count 3, the Bews allege that the actions about which they complain "constitute retaliation for Plaintiffs' public criticism of Defendant Town, including for their unequal application of town zoning and land use regulations."  (Id. ¶ 79.)  They claim that the defendants violated their right to free speech as protected by both the United States Constitution and the New Hampshire Constitution.  The remaining counts assert claims for emotional distress and abuse of process under state law.

The Bews seek "all damages as allowed by law," including enhanced compensatory damages, liquidated damages, double damages, liberal compensatory and punitive damages, reasonable attorneys' fees, interest and costs, and "an additional amount to be awarded to make up for the tax consequences of any settlement or verdict on the entire amount of the award including attorneys' fees, interest and costs."  (Id. at 20-21.)

In response, the defendants have filed a motion for summary judgment asserting that the Bews' federal claims for selective enforcement of zoning laws (and for the failure to investigate improper activities of other persons allegedly in violation of zoning laws) are barred by res judicata.  (Defs.' Mot. for Summ. J., Doc. No. 47, at 10-11.)  They argue that the previous litigation in New Hampshire Superior Court and the stipulation that ended that dispute foreclose the Bews from asserting their

current First and Fourteenth Amendment claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

## III. ANALYSIS

Defendants argue that because the Bews could have raised their First and Fourteenth Amendment claims as defenses to the Town's enforcement action, the doctrine of res judicata bars them from doing so now. (Defs.' Mot. for Summ. J., Doc. No. 47, at 10-11.) I now turn to the doctrine of res judicata and its application here.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466-67 n.6 (1982). Thus, causes of action litigated and resolved by a final action of a state court, as well as claims arising from the same set of facts at issue in that state court cause of action, cannot be litigated in a later federal court suit. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83-85 (1984). The U.S. Supreme Court has held that the preclusive effect of a state court judgment applies with equal force to federal claims arising under 42 U.S.C. § 1983. Id. at 85 ("Section 1983 . . . does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims."); see also Allen v. McCurry, 449 U.S. 90, 105 (1980) (state courts are capable of rendering decisions on constitutional questions and upholding federal law). Absent a showing that the state court would not have been able to adjudicate a petitioner's federal claims had they been presented in the original suit in state court, a petitioner is barred from litigating the related federal claims in a federal court. See Migra, 465 U.S. at 85.

The U.S. Court of Appeals for the First Circuit has held that res judicata also applies with equal force to bar those claims that could have been raised as affirmative defenses in previous state court actions. Lovely v. Laliberte, 498 F.2d 1261, 1263 (1st Cir. 1974) ("Res judicata precludes even 'perfect defenses . . . of which no proof was offered . . . . [A] judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented.'" (internal citations omitted)). In Lovely v. Laliberte, Lovely brought a § 1983 action in federal court alleging that Laliberte was unconstitutionally employing state process to evict him from a mobile home park. That suit followed a previous action where Laliberte had sought a Writ of Possession against Lovely in state court. Id. at 1262. Lovely responded by exercising his right to a *de novo* trial in state court, and at trial, Laliberte argued that Lovely violated the landlord's mobile home park rules. At no point during that proceeding did Lovely raise his federal § 1983 claim as either a defense or a counterclaim. Id. at 1263. The trial court ordered his eviction, and rather than appeal, Lovely brought a new claim -- alleging a § 1983 violation -- in federal court. The federal court dismissed the action, holding that it was barred by res judicata, and the First Circuit affirmed. Id. at 1263-64.

In order to apply the preclusive effect of res judicata to the federal claims asserted here, two requirements must be met. First, the Bews' current § 1983 claims must arise out of the same set of facts as the injunction proceeding that was filed in superior court in September 2004.  See Lovely, 498 F.2d at 1263; see also E. Marine Constr. Corp. v. First S. Leasing, 525 A.2d 709, 711-12 (N.H. 1987) (final judgment bars subsequent litigation on same cause of action, and cause of action refers "to all theories on which relief could be claimed on the basis of the factual transaction in question").  Second, that previous injunction proceeding must have resulted in a final judgment.[4]  See Allen, 449 U.S. at 94.  I address both requirements, and the Bews' arguments with respect to each, in the sections that follow.[5]

---

[4]  Res judicata also requires identity of parties or their privies in the two suits.  Sleeper v. Hoban Family P'ship, 955 A.2d 879, 882 (N.H. 2008).  Although the parties do not address this requirement, it is satisfied in a case such as this where a government entity is a party in the first suit, and that same entity is then a defendant in a later suit in which officers of that government are also joined as defendants.  Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."); Mandarino v. Pollard, 718 F.2d 845, 850 (7th Cir. 1983) ("A government and its officers are in privity for purposes of res judicata.").

[5]  In order for res judicata to apply in this case, it is necessary to look to New Hampshire law, in other words, the law of the state where the underlying judgment was issued, to determine whether a state court would bar this current action.

-11-

## A. The Federal Claims Now Asserted Arise Out of the Same Set of Facts at Issue in the Superior Court Proceeding

The amended petition at issue in September 2004 requested that the state court enjoin the Bews from renting or advertising rentals for snowmobiles until they were granted site plan approval for that use and obtained "a special exception from the Zoning Board of Adjustment allowing for such use." (Pet. for Inj., Doc. No. 47-3, at 6.)  Similarly, the Bews describe the injunction petition brought against them as one that "sought to enjoin them from renting snowmobiles because [the Town] alleged it was a 'change of use.'"  (Pls.' Opp'n to Summ. J., Doc. No. 36-2, at 4.)  The Bews now assert § 1983 claims alleging that by bringing that injunction action, the defendants violated the Bews' First and Fourteenth Amendment rights.  More specifically, the Bews claim that the defendants selectively enforced the zoning ordinances against them, an offense that culminated in the Town's seeking an injunction in state court.  Moreover, the Bews claim that because they criticized the defendants for the way in which they selectively applied the zoning laws, the Bews were "solely prosecute[d]" and served with a petition for injunction, thus violating their rights to free speech.  (Compl., Doc. No. 1, ¶¶ 75, 79-80; Pls.' Opp'n to Summ. J., Doc. No. 36-2, at 18.)

During the superior court action, the Bews did not assert

---

See Perez-Guzman v. Gracia, 346 F.3d 229, 233-34 (1st Cir. 2003).

either of the constitutional claims now raised in this current action. It is clear, however, the same facts at issue in that proceeding are now at issue here. Both cases concern the Town's attempt to enjoin the Bews - rightly or wrongly - from renting snowmobiles without Town approval. In this current action, the Bews cite that earlier prosecution, including the events leading up to it, as a violation of their First and Fourteenth Amendment rights. Thus, the same facts at issue in the state court action are at issue here, and the Bews should have brought their § 1983 claims at that time.

First Circuit precedent makes clear that the Bews should have raised their constitutional arguments in the previous state court action. Much like the way in which the Town sought an injunction against the Bews, in Lovely, Lovely's landlord sued him in state court alleging that Lovely's use of the property violated the park rules. See 498 F.2d at 1262-63. After the trial court ordered his eviction, Lovely brought a new action in federal court alleging a § 1983 violation because the landlord abused state process to evict him.[6] Id. Although Lovely's § 1983 claim involved the same facts at issue in the previous state court eviction proceeding, he failed to assert it at that time as

---

[6] There is no doubt that the Bews could have presented their selective prosecution and First Amendment retaliation claims as defenses to the initial enforcement action, just as Lovely could have raised his abuse of process claim as a defense to the eviction proceeding.

either a defense or a counterclaim.  Faced with these facts, the First Circuit concluded that Lovely's § 1983 claim was barred by res judicata.  Similarly, the Bews failed to raise their § 1983 claims during the state court proceeding, and just as the doctrine of res judicata blocked Lovely from later asserting his constitutional claim in a new federal action, so too does that principle bar the Bews from now asserting their § 1983 claims. See id.

### B.   The Superior Court Proceeding Ended in a Final Action

Res Judicata prohibits relitigating issues that could have been raised in a previous action only when the previous action ended in a final judgment.  Allen, 449 U.S. at 94.  Thus, the doctrine's application in this case turns on whether the stipulation entered into by the parties on November 4, 2004 was a final judgment.

The Bews raise two arguments to support the proposition that the stipulation reached in the state court action was not a final judgment.  First, they argue that because the stipulation lacks the traditional docket markings, "neither party, no costs, no further action for the same cause" or dismissal "with prejudice," it does not represent a final judgment.  (Pls.' Opp'n to Summ. J., Doc. No. 36-2, at 8.)  In short, the Bews argue that absent these "standard docket markings with prejudice," the stipulation is without finality.  (Id. at 10.)

-14-

As an initial matter, it should be noted that a settlement agreement, approved by the court, has the same res judicata effect under New Hampshire law as a final judgment reached through the usual course of litigation. Moore v. Town of Lebanon, 69 A.2d 516, 518 (N.H. 1949); see also Langton v. Hogan, 71 F.3d 930, 935 (1st Cir. 1995). Moreover, a stipulation with "neither party" docket markings does constitute "a final judgment for the purpose of applying res judicata." See Meier v. Town of Littleton, 910 A.2d 1243, 1245 (N.H. 2006); see also Cathedral of the Beechwoods, Inc. v. Pare, 639 A.2d 1098, 1099 (N.H. 1994). The absence of those precise words in a stipulation, however, does not necessarily require that the stipulation be deemed "not final." Rather, those words merely reveal "the intention of the parties consenting to the marking." Moore, 69 A.2d at 519; see 5 Richard W. Wiesbusch, New Hampshire Practice: Civil Practice and Procedure § 34.09 (2d ed. 1998) ("Although *the parties can stipulate to any docket markings that accurately and briefly reflect the manner in which the case is to be terminated*, the most common stipulations are so-called 'neither party' docket markings.") (emphasis added). Thus, to evaluate the Bews' argument, I must examine the language of the stipulation to discern whether the parties intended the document to be a final resolution of all matters that could have been litigated in the enforcement action.

Here, both parties agreed to the stipulation, which read, in part, "the following may be entered on the docket as a final order in this case." (Stip., Doc. No. 47-4.) This language suggests that the parties intended this stipulation to be final. The parties did not use the "no further action for the same cause" docket markings because they instead chose to specifically provide for a possible future action to enforce the terms of the settlement. Thus, rather than state "no further action for the same cause," the parties agreed to the following: "In the event any action is instituted by either party to enforce the provisions of this Stipulation, the prevailing party shall be entitled to recover its attorney fees and costs." (<u>Id.</u>) Given the nature of the issue that this stipulation sought to resolve, the use of an enforcement clause was a rational and appropriate decision consistent with the parties' manifest intention to avoid relitigation of the underlying dispute. This enforcement provision, coupled with the language that the stipulation was to be docketed as "a final order in this case," makes clear that the parties intended the stipulation to be a final judgment.

The Bews next argue that because they made no admission of liability in the stipulation, it was not a final judgment, "which means selective enforcement of the regulation may still be disputed and the violation of their civil rights vindicated." (Pls.' Opp'n to Summ. J., Doc. No. 36-2, at 8, 10.) This, too,

-16-

is a hollow argument.  Acceptance of responsibility is not a prerequisite for finality.  The New Hampshire Supreme Court has held that the preclusive effect of res judicata "can follow from a consent judgment resulting in docket markings [Neither party. No further action for the same cause]," and it has not required that one party admit liability.  Concrete Constr., Inc. v. Manchester Bank, 377 A.2d 612, 614 (N.H. 1977).  In fact, when such docket markings are entered, neither the plaintiff nor the defendant in the action is admitting fault; rather, the parties agree to a "consent judgment."  See Waters v. Hedberg, 496 A.2d 333, 334-35 (N.H. 1985) (neither party "docket markings reflect a judgment for 'neither party'").  As explained above, the use of the standard docket markings is not required, and the parties here crafted a stipulation where neither party assumed liability and the Bews agreed to refrain from rental operations until they obtained approval from the Town.  Thus, res judicata can follow from this stipulation in the same way that it would from one with the standard "neither party" markings where neither party assumes liability.

    Just as the standard docket markings indicate finality for res judicata purposes, so too does the stipulation used in this case because it evinces an intent of the parties to bring closure to the enforcement matter.  Thus, the time for the Bews to raise their First and Fourteenth Amendment claims was during the state

court injunction proceeding.  Having failed to allege that the state court was somehow unequipped to vindicate their federal constitutional rights, the Bews presently have no remedy with respect to those particular claims in this court.

## IV.  CONCLUSION

The defendants' motion for summary judgment (Doc. No. 33) is granted in part with respect to the Bews' federal claims, namely Count 1 and the federal constitutional claim raised in Count 3. I decline to exercise supplemental jurisdiction over the remaining state law claims, and therefore, those claims are dismissed without prejudice.  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 15, 2009

cc:  Leslie H. Johnson, Esq.
     Garry R. Lane, Esq.
     Lisa Lee, Esq.